**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Shad Daniel Armstrong,

                    Petitioner,

v.

Charles L. Ryan, et al.,

                    Respondents.

No. CV-15-00358-TUC-RM

DEATH PENALTY CASE

**ORDER**

Before the Court is Petitioner Shad Armstrong's motion for an order staying and holding in abeyance these habeas proceedings. (Doc. 28.) Armstrong is an Arizona death-row prisoner. He filed a habeas petition on July 1, 2016. (Doc. 20.) In the pending motion he seeks a stay so that he can return to state court and exhaust Claims 1(A), 4(A)(4)(a)-(b), 5(B), and 6(B). (Doc. 28.) He also seeks permission for his federal habeas counsel to appear on his behalf in state court. Respondents filed a response in opposition to the requested stay, and Petitioner filed a reply. (Docs. 32, 40.) For the reasons set forth below, the motion is denied.

## BACKGROUND

In March 2000, a Pima County jury convicted Petitioner of murdering, and conspiring to murder, his sister and her fiancé. The trial judge imposed death sentences for each murder. In 2006, following the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), a jury resentenced Petitioner to death for each murder. The Arizona Supreme Court, in its opinion affirming the convictions and sentences, set forth the following facts:

In 1996, Armstrong lived in Oklahoma with his girlfriend Russette Medina and his sister Farrah. Armstrong and Farrah burglarized a home in Texas. After Armstrong learned that Oklahoma authorities were looking for him, he fled to Tucson with Medina, Medina's daughter, and Farrah.

In Tucson, Farrah met [Frank] Williams. They became romantically involved and moved into an apartment together. Armstrong and Medina could not afford rent, so they moved in with Williams and Farrah. Tensions grew in the apartment. Medina and Armstrong frequently clashed, and Farrah was upset with Armstrong because of an unpaid cable bill. In early 1998, Armstrong left the apartment and moved in with his friend David Doogan. They lived in a trailer in Three Points, Arizona, belonging to Doogan's father. Later, Medina, her daughter, and another child fathered by Armstrong also moved to the trailer in Three Points.

Meanwhile, Farrah and Williams visited Farrah's parents in Oklahoma. They shared their plans to move there and get married. Farrah discussed with her parents her need to resolve her outstanding legal problems. After returning to Tucson in early February, Farrah told Medina about her plans to return to Oklahoma and turn herself over to authorities. She also told Medina that in order to get favorable treatment, she planned to tell the Oklahoma authorities where Armstrong was located.

Medina told Armstrong about his sister's plans. He became angry and worried that he would go to prison and that he and Medina would lose custody of their children. Shortly after, Armstrong discussed Farrah's plans with Doogan and the pair started plotting to kill Farrah and Williams.

Several days before the murders, Armstrong and Doogan dug a grave near the trailer. On the afternoon of February 19, 1998, Armstrong asked Farrah to come to Three Points because he had money for the unpaid cable bill. He also asked her to bring Williams because they needed his help with Doogan's car. Armstrong had Medina and the children go to a different trailer so the children would not see Farrah arrive. To further prepare for the murders, Doogan and Armstrong hung sheets on the walls and gathered plastic bags and a blanket to cover the bodies. Armstrong also loaded a shotgun with deer slugs.

Near dusk, Farrah and Williams drove up to the property, Doogan opened the front door, and Armstrong hid with the shotgun. As Farrah and Williams approached the trailer, Doogan waved Armstrong off. Armstrong put down the gun and greeted Farrah and Williams. Eventually everyone was in the living room. Farrah sat on a couch, Williams sat on a recliner, and Doogan sat on a chair opposite Williams. As Doogan talked with Farrah and Williams, Armstrong retrieved the shotgun. He returned to the living room and shot Williams in the chest. Armstrong shot Farrah twice, first in the chest and then in the head. He then shot Williams in the head.

Doogan and Armstrong disposed of the bodies. They placed a plastic bag over Williams' head and wrapped the blanket around both bodies. They could not easily carry the bodies, so they dragged them outside and used a truck to pull the blanket to the open grave. They pushed the bodies into the hole and partially filled it with dirt. They then moved the bloody couch and recliner into the truck bed. Armstrong gathered some of the bloody sheets, put them in the hole with the bodies, and finished filling the grave. By that time, Medina had returned to the main trailer and soon they all got in the

truck and left Three Points. They dumped the furniture in the desert and headed to Williams and Farrah's apartment, where they took some electronic items and Farrah's jewelry.

On the Sunday after the killings, Doogan's neighbor called and asked Doogan if he knew where Armstrong was. Doogan, following Armstrong's directions, said that Armstrong had left for Michigan. Armstrong immediately prepared to leave town. Armstrong, Medina, and the children spent several months in Los Angeles before relocating to Odessa, Texas. Despite these evasive maneuvers, an investigation was already in progress. A friend of Williams and Farrah called the police about their disappearance, and authorities discovered the blood-stained furniture in the desert. Doogan's father also contacted the police. The police obtained a search warrant for the Three Points property, discovered the bodies, and began searching for Armstrong and Medina. Nearly a year after the killings, authorities arrested them in Texas.

*State v. Armstrong*, 218 Ariz. 451, 456–58, 189 P.3d 378, 383–85 (2008).

## **APPLICABLE LAW**

### 1.     *Rhines* **Stay and Abeyance**

A federal court may not "adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518–519 (1982)). In *Rhines*, however, the Supreme Court held that "a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Id*. at 271–72. This discretion is to be exercised under "limited circumstances," *id*. at 277, because "routinely granting stays would undermine the AEDPA's goals of encouraging finality and streamlining federal habeas proceedings." *Blake v. Baker*, 745 F.3d 977, 981–82 (9th Cir. 2014).

The stay-and-abeyance procedure is appropriate only where the habeas petitioner has shown: (1) "good cause" for the failure to exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner did not "engage[] in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. "[G]ood cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust the claim in state court. *Blake*, 745 F.3d at 982. However, "even if a petitioner

had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277.

### 2. Exhaustion

The *Rhines* procedure for staying a petition applies only to so-called "mixed petitions," or petitions containing both exhausted and unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139-40 (9th Cir. 2009) (explaining that the *Rhines* exception to the total exhaustion rule carved out an exception allowing mixed petitions to remain pending in federal court under limited circumstances). A petitioner's claims are exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). This latter form of exhaustion, where a petitioner has failed to meet the State's procedural requirement for presenting a claim in state court, is described as "technical exhaustion" through procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (observing that if state court where petitioner would be required to present the claims would find the claims procedurally barred, petitioner has technically exhausted the claims through procedural default).

## DISCUSSION

Petitioner seeks a stay so that he can return to state court and exhaust the unexhausted claims presented in his habeas petition. Though Petitioner asserts that all of the unexhausted claims in his petition meet the requirements for receiving a stay under *Rhines*, he addresses the specific criteria of *Rhines* in support of his motion only as to four claims from his petition. Accordingly, the Court addresses Petitioner's motion only as to these claims, finding all other arguments waived.

Respondents assert that the four claims at issue are either actually or technically

exhausted, and thus Petitioner cannot obtain a *Rhines* stay. *See, e.g.*, *White v. Ryan*, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply."); *see also King*, 564 F.3d at 1139-40 (explaining that *Rhines* "allows a district court to stay a *mixed* petition"). Petitioner agrees that the availability of a state remedy is a relevant factor for this court to consider, but disagrees with Respondents' contention that his claims are actually or technically exhausted.

Petitioner asserts that a stay is appropriate because it is not absolutely clear that a successive petition would be procedurally barred, and the state courts are in a better position to determine whether a petitioner can meet Arizona's procedural requirements for bringing a successive claim. This Court disagrees; it is the role of the district court to determine if a petitioner presently has a remedy available in state court. *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (finding it is district court's role to assess availability of state-court remedy). In making that decision, the court is required to "assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citing *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring)). The question is whether "there is some reasonable probability that (state) relief ... will actually be available." *Matias v. Oshiro*, 683 F.2d 318, 320 (9th Cir. 1982) (citing *Powell v. Wyrick*, 657 F.2d 222, 224 (8th Cir. 1981)). If a district court determines that a state remedy for Petitioner's unexhausted claims is available, and that petitioner is presenting a mixed petition, the court must then assess whether Petitioner meets the requirements to obtain a *Rhines* stay. Accordingly, the Court turns first to the question of whether there is a reasonably probability that Petitioner has an available state remedy for raising the claims presented in his motion.

Rule 32 of the Arizona Rules of Criminal Procedure ("Rule 32") governs post-conviction relief ("PCR") proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition

pursuant to Rule 32.2(a)(3), or that is time-barred pursuant to Rule 32.4(a). Only if a claim falls within certain exceptions, including newly discovered evidence and actual innocence, and the petitioner can justify his omission of the claim from a prior petition or his failure to present the claim in a timely manner, may the preclusive effect of Rule 32.2(a) be avoided or the jurisdictional requirement of Rule 32.4 be satisfied. *See* Ariz. Rule Crim. Proc. 32.1(d)–(h), 32.2(b); 32.4(a)).

Petitioner contends that an exception to Arizona's default rules also exists when a habeas petitioner was misled as to the existence of the factual bases for his constitutional claims. Petitioner cites two state cases in support of this assertion, *State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014), and *State v. Goldin*, 239 Ariz. 12, 365 P.3d 364 (App. 2015), neither of which support his position. In *Diaz*, the Arizona Supreme Court determined that a defendant whose counsel had failed to file a petition in two previous Rule 32 proceedings was entitled to raise an ineffective assistance of counsel ("IAC") claim in a third proceeding. *Diaz*, 236 Ariz. at 363, 340 P.3d at 1071. The court declined to find Diaz's IAC claim waived pursuant to Rule 32.2(a)(3) because Diaz timely filed a notice of PCR seeking to assert an IAC claim, and he was blameless regarding his former attorneys' failures to file an initial PCR petition. *Id.* The court explained that its holding would not frustrate Rule 32's preclusion provisions because permitting Diaz to file his first petition to assert an IAC claim would not result in repeated review of the IAC claim; it would result in its first review. *Id.*

In *Goldin*, an unpublished opinion, Arizona's court of appeals remanded an untimely petition to the trial court for consideration pursuant to Rule 32.1(f), which provides that a notice may be considered timely if "[t]he defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part." *Goldin*, 239 Ariz. 12, 365 P.3d at 370. The court noted that, "just as in *Diaz*, Goldin was 'blameless' and allowing his claim to move forward would result in a 'first review,' not repeated review." *Id.* at 12, 365 P.3d at 369 (citing *Diaz*, 236 Ariz. 361, 340 P.3d at 1071).

1   Because Petitioner in this case has obtained adjudication of at least one Rule 32

2   petition, the holding in *Diaz* has no application here. *See Diaz*, 236 Ariz. at 363, 340 P.3d

3   at 1071 ("Once the petition is adjudicated, and assuming that Diaz does not obtain relief,

4   this *and all other claims that Diaz might have brought* will be precluded and Diaz will

5   not be able to raise them in a successive petition." (emphasis added)) (citing *Stewart v.*

6   *Smith*, 202 Ariz. 446, 450, 46 P.3d 1067, 1071 (2002) ("If the merits were to be examined

7   on each petition, Rule 32.2 would have little preclusive effect and its purpose would be

8   defeated.")).

9   Next, Petitioner argues that Rule 32.2(a)(3), concerning waiver of claims for

10  failure of counsel to assert them, does not apply to claims that "affected a right of

11  constitutional magnitude" if the petitioner (as opposed to post-conviction counsel) did not

12  personally waive the claim. (Doc. 28 at 5) (citing *Diaz*, 236 Ariz. at 362, 340 P.3d at

13  1070). The Court finds Petitioner's claims do not fall within the limited framework of

14  claims requiring a knowing, voluntary, and intelligent waiver before the application of a

15  preclusion finding. *See* Ariz. Rule Crim. Proc. 32.2(a)(3) cmt. (West 2004) (noting that

16  most claims of trial error do not require a personal waiver); *Smith*, 202 Ariz. at 449, 46

17  P.3d at 1070 (identifying the right to counsel, right to a jury trial, and right to a 12-person

18  jury under the Arizona Constitution as the type of claims that require personal waiver);

19  *see also State v. Espinosa*, 200 Ariz. 503, 505, 29 P.3d 278, 280 (App. 2001) (withdrawal

20  of plea offer in violation of due process not a claim requiring personal waiver); *State v.*

21  *Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App. 2007) ("An alleged violation of

22  the general due process right of every defendant to a fair trial, without more, does not

23  save that belated claim from preclusion."). Additionally, if different IAC allegations are

24  raised in successive petitions, the claim in the later petition will be precluded without a

25  review of the constitutional magnitude of the claim. *See Smith*, 202 Ariz. at 450, 46 P.3d

26  at 1071. Petitioner raised other IAC allegations in his first PCR petition; therefore,

27  successive claims of IAC on appeal are necessarily precluded.

28  Petitioner argues that his claims represent an exception to the preclusive effect of

Rule 32.2(a) because they rely on newly discovered evidence and constitute claims of "actual innocence." According to the relevant provisions of Rule 32.1, a defendant is not precluded from filing a successive PCR petition alleging that "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence" or that "the facts underlying the claim would be sufficient to establish [by clear and convincing evidence] that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty." Ariz. Rule Crim. Proc. 32.1(e), (h). The Court addresses these assertions in the context of the specific claims raised in Petitioner's motion below and finds that the stay-and-abeyance process is not appropriate for any of the four claims because the claims are technically exhausted.

### 1.    Claim 1(A): Ineffective Assistance of Counsel

Petitioner alleges that counsel were ineffective at resentencing by failing to investigate, develop, and present mitigating evidence of Petitioner's bipolar disorder and untreated diabetes, by failing to explain how these conditions affected his behavior at the time of the offense, by failing to utilize the expert report and testimony from the first sentencing proceeding as a foundation for their own investigation, and by failing to understand that the expert report and testimony would be admissible in the resentencing proceedings. (*See* Doc. 20 at 21–78.)[1] Petitioner contends that Claim 1(A) is potentially meritorious, and that good cause exists for his failure to exhaust the claim because PCR counsel performed ineffectively by failing to make a showing of prejudice as a result of resentencing counsel's failures. Respondents contend the claim is technically exhausted[2] but procedurally defaulted, and thus a *Rhines* stay is inappropriate. For the reasons set forth below, Petitioner is not entitled to a stay on this claim.

---

[1] Citation to document page numbers are to the pages as numbered in the document itself, not as the documents have been renumbered by the Court's electronic filing system.

[2] Respondents have withdrawn their argument that this IAC claim was exhausted through presentation of the claim to the state courts. (*See* Doc. 51.)

Because Petitioner could have, and in fact did, raise claims of ineffective assistance of counsel in his first post-conviction proceeding, he is precluded from doing so now. *See* Ariz. Rule Crim. Proc. 32.2(a)(2), (3); *see also State v. Spreitz*, 202 Ariz. 1, 2, 39 P.3d 525, 526 (2002) ("Our basic rule is that where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (emphasis omitted).

Petitioner cannot avoid the preclusive effects of Rule 32.2(a) by raising Claim 1(A) pursuant to Rule 32.1(e) or 32.1(h).  A claim alleging ineffective assistance of sentencing counsel is a constitutional claim properly raised under Rule 32.1(a).  *See* Ariz. Rule Crim. Proc. 32.1(a) ("The conviction or the sentence was in violation of the Constitution of the United States or of the State of Arizona.").  Petitioner supports Claim 1(A) with new evidence, and such evidence could potentially support a newly discovered evidence claim under Rule 32.1(e).  The preclusive effects of Rule 32.2(a) do not apply to claims for relief under Rule 32.1(e).  *See* Ariz. Rule Crim. Proc. 32.2(b).  However, bringing a claim under Rule 32.1(e) would not allow Petitioner to fully exhaust Claim 1(A).  Relief is available under Rule 32.1(e) if "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence." Ariz. Rule Crim. Proc. 32.1(e).  This inquiry is similar to the test for prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).  However, Rule 32.1(e) does not afford a mechanism for applying the deficient performance prong of the *Strickland* test. Accordingly, raising a newly discovered evidence claim under Rule 32.1(e) would not allow Petitioner to fully exhaust Claim 1(A).

For similar reasons, Petitioner cannot avoid the preclusive effects of Rule 32.2(a) by raising Claim 1(A) pursuant to Rule 32.1(h).  Although Rule 32.1(h), like Rule 32.1(e), is exempt from the preclusive effects of Rule 32.2(a), *see* Ariz. Rule Crim. Proc. 32.2(b), it does not provide a mechanism for fully exhausting Claim 1(A).  Relief is available under Rule 32.1(h) if the "defendant demonstrates by clear and convincing

1   evidence that the facts underlying the claim would be sufficient to establish that no
2   reasonable fact-finder would have found defendant guilty of the underlying offense
3   beyond a reasonable doubt, or that the court would not have imposed the death penalty."
4   Ariz. Rule Crim. Proc. 32.1(h).  Not only does this test not afford a mechanism for
5   applying the deficient performance prong of the *Strickland* test, it also does not afford a
6   mechanism for applying the prejudice prong, because the "clear and convincing
7   evidence" standard exceeds *Strickland*'s requirement of proving a mere reasonable
8   probability of a different outcome.  *See Strickland*, 466 U.S. at 694 (under prejudice
9   prong, a petitioner must "show that there is a reasonable probability that, but for
10  counsel's unprofessional errors, the result of the proceeding would have been different").

11      Because Petitioner would not be able to exhaust Claim 1(A) in a successive state
12  petition for post-conviction relief, Petitioner's IAC claim is "technically" exhausted, and
13  a *Rhines* stay would be inappropriate.

14          **2.      Claims 4(A)(4)(a) and (b)**

15      Petitioner alleges that the prosecutor committed misconduct in violation of
16  Petitioner's due process rights by lying to the trial court regarding the circumstances of
17  co-defendant Russette Medina's plea deal and by failing to disclose exculpatory
18  information from Medina, Tommy Taylor, and Virginia Armstrong in violation of the
19  rule established in *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 20 at 371–75.)
20  Petitioner contends that these claims are potentially meritorious, and that good cause
21  exists for his failure to exhaust the claims because the State violated its constitutional
22  disclosure obligations. Respondents contend that a *Rhines* stay is inappropriate because
23  Claims 4(A)(4)(a) and (b) are technically exhausted. For the reasons set forth below,
24  Petitioner is not entitled to a stay on this claim.

25      In October 1999, the prosecutor sought to sever the trials of Petitioner and co-
26  defendant Medina, in order to use Medina's post-arrest statement against Petitioner at
27  trial. *See State v. Armstrong*, 208 Ariz. 345, 351, 93 P.3d 1061, 1067 (2004). Though the
28  court expressed skepticism that the State would proceed against Medina, both the

prosecutor and Medina's counsel maintained that Medina would not accept a second-degree murder plea and the state was not willing to lower the plea to hindering prosecution. *Id.* On December 17, 1999, the court found Medina's post-arrest statement inadmissible. *Id.* On January 5, 2000, the day before trial was set to begin, the prosecutor announced that Medina had agreed to a plea and would be called as a witness against Petitioner. *Id.* The prosecutor explained that after the trial court precluded the use of Medina's post-arrest statement on December 17, she discussed her concerns about the strength of her case against Medina with her supervisor on December 20. *Id.* At his suggestion, she met with a homicide panel on December 27. *Id.* The panel advised her to seek an additional charge of trafficking in stolen property against Medina from the grand jury before resuming plea negotiations. *Id.* On January 5, the prosecutor was informed by counsel that Medina would be willing to plead to trafficking in stolen property and facilitation to commit murder. *Id.* With this information, the prosecutor convened an impromptu homicide panel over the lunch hour and presented them with the proposed plea. *Id.* The panel approved the plea offer. *Id.* at 352, 93 P.3d at 1068. Petitioner asserted that the prosecutor acted in bad faith in disclosing Medina at such a late date and sought, as possible sanctions, either preclusion of Medina's testimony or a continuance. *Id.* The trial court held a hearing on Petitioner's motion and found no willful misconduct or bad faith, but continued the start date of the trial for two weeks. *Id.*

Petitioner now states that federal habeas counsel has reviewed the prosecution file, including the prosecutor's own e-mails, and has discovered, based on the absence of e-mails or notes regarding any homicide panel reviews other than one on December 27, 2000, that there were not three homicide panels, as the prosecutor represented to the trial court, but that there was likely only one, which occurred a week before the prosecutor revealed the existence of Medina's plea. (*See* Doc. 20 at Ex. 50, ¶¶ 4(aa), 4(bb), 4(ee), and 4(ff).) Petitioner argues that if the trial court had been aware of this information, it would have found the prosecutor to be acting in bad faith and would have prevented Medina from testifying. The Court finds that this claim is technically exhausted.

1     Petitioner contends that there is a state remedy available to review these claims

2  because they rely on newly discovered evidence. The preclusive effects of Rule 32.2(a)

3  do not apply to claims for relief based on newly discovered evidence when raised in a

4  successive or untimely post-conviction relief proceeding, if the newly discovered

5  material facts "probably exist and such facts probably would have changed the verdict or

6  sentence." *See* Ariz. Rule Crim. Proc. 32.1(e); 32.2(b). Petitioner's prosecutorial

7  misconduct and *Brady* claims, however, are constitutional claims, and are therefore

8  cognizable in state court under Rule 32.1(a). *See Brady v. Maryland*, 373 U.S. 83, 87

9  (1963) (suppression of evidence by state "of evidence favorable to an accused upon

10  request violates due process where the evidence is material either to guilt or to

11  punishment"); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (the appropriate standard

12  of federal habeas review for a claim of prosecutorial misconduct is "the narrow one of

13  due process, and not the broad exercise of supervisory power."). As such, the claims are

14  subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely

15  proceeding. *See* Ariz. Rule Crim. Proc. 32.2(b); 32.4(a).  Rule 32.1(e) does not provide a

16  mechanism for fully exhausting Claims 4(A)(4)(a) and (b), because it does not allow for

17  application of the legal standards applicable to the constitutional claims.

18     Because Petitioner lacks the means to exhaust Claims 4(A)(4)(a) and (b) in state

19  court, Petitioner's due process claims are "technically" exhausted, and a *Rhines* stay

20  would be inappropriate.

21     **3.     Claim 5(B)**

22     Petitioner alleges that the prosecutor committed misconduct by exploiting the

23  State of Arizona's Victims' Bill of Rights[3] to exercise exclusive control over Petitioner's

24  mother, Virginia ("Ginger") Armstrong, to prevent her from assisting the defense

25  investigation. (Doc. 20 at 403–75.) Petitioner contends that this claim is potentially

26  meritorious, and that good cause exists for his failure to exhaust the claim because state

27  _____

28     [3] Ariz. Const. art. 2, § 2.1; *see also* A.R.S. §§ 13-4401–4442 (Crime Victim
Rights).

- 12 -

actors have interfered with Petitioner's ability to vindicate his federal constitutional rights. Respondents contend that a *Rhines* stay is inappropriate because Claim 5(B) is technically exhausted but procedurally defaulted. For the reasons set forth below, Petitioner is not entitled to a stay on this claim.

Petitioner claims the prosecutor engaged in a pattern of misconduct to prevent Petitioner from obtaining constitutionally relevant mitigation evidence and from rebutting the state's evidentiary presentation in aggravation by (1) persuading Ginger not to cooperate with the defense, (2) falsely representing that Ginger was not interested in having contact with the defense, (3) representing that Ginger did not want to be called as a witness, then calling her as a witness at the resentencing, (4) violating Ginger's rights by threatening to subpoena her to compel her attendance at the resentencing, (5) materially changing positions at the resentencing by representing that Ginger was unable, as opposed to unwilling, to meet with the defense, and (6) suppressing material exculpatory information regarding Ginger's sentencing recommendation.

Petitioner asserts that on the basis of the state's suppression of information from Ginger, he is entitled to factual development from this Court to litigate his allegations of cause and prejudice, and because he can show cause and prejudice to overcome any state procedural default, he can necessarily show good cause under *Rhines* for a stay. But this argument only aids Petitioner if he can also demonstrate he still has an available state remedy to raise this claim. This Court finds he does not.

As this Court explained in analyzing Claims 4(A)(4)(a) and (b), Petitioner's prosecutorial misconduct claim is a constitutional claim, and is therefore cognizable in state court under Rule 32.1(a). *See Wardius v. Oregon*, 412 U.S. 470 (1973) (holding that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants); *Webb v. Texas*, 409 U.S. 95 (1972) (per curiam) (interference with witness' testimony may deprive defendant of due process rights under the Fourteenth Amendment). As such, the claims are subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely proceeding.

*See* Ariz. Rule Crim. Proc. 32.2(b); 32.4(a).  Rule 32.1(e) does not provide a mechanism for fully exhausting Claim 5(B) because it does not allow for application of the legal standard applicable to the constitutional claim.

Because Petitioner lacks the means to exhaust Claim 5(B) in state court, the claim is "technically" exhausted, and a *Rhines* stay is inappropriate.

### 4.      Claim 6(B)

Petitioner alleges a claim of juror misconduct arising from a juror's failure to disclose a prior arrest and outstanding warrant on pending fraud charges. (Doc. 20 at 440–444.) Respondents contend that a *Rhines* stay is inappropriate because Claim 6(B) rests on pure speculation, and, moreover, is technically exhausted but procedurally defaulted. For the reasons set forth below, Petitioner is not entitled to a stay on this claim.

During jury selection for Petitioner's resentencing, juror M.G. was called in for individual voir dire to address answers in his juror questionnaire[4] indicating that he could not follow the law as instructed if he did not agree with it, RT[5] 10/25/06 at 198, could not serve as a fair and impartial juror given his feelings on the death penalty, *id.* at 198-99, would not consider mitigation evidence, *id.* at 200, and believed the death penalty was used too seldom, *id.* at 205. When M.G. was asked about the responses on his questionnaire, he stated that he had made a mistake, *id.* at 198, that he could follow the law, *id.* at 199, that he wasn't paying attention to the question concerning mitigating evidence, *id.* at 200, and that he wasn't sure why he opined that the death penalty was used too seldom and would actually rather it be used less, though possibly he had been thinking that in Texas, where he was from, it was used too seldom, *id.* at 205–06. Counsel did not move to strike Petitioner for cause. *Id.* at 210. The juror questionnaire also asked prospective jurors whether "you, a family member or a close friend [have]

---

[4] Petitioner contends that the only juror questionnaires that were made part of the state-court record pertain to the jurors challenged on *Batson* grounds. *See* RT 1/11/00 at 138–156. Petitioner surmises what juror M.G.'s answers on the questionnaire were from the questions asked of him during individual voir dire, but "intends to seek formal discovery to obtain the remaining jury questionnaires." (*See* Doc. 20 at 441 n.30.)

[5] "RT" refers to the reporter's transcripts from Petitioner's state-court proceedings.

ever been arrested for any crime other than minor traffic violations? If yes, please describe who was charged or arrested for the crime, the nature of the crime, dates of arrest and the outcome." (Doc. 20, Ex. 30 at 4.) Petitioner contends that the lack of any questioning about M.G.'s criminal history indicates that he answered this question in the negative.

Now, federal habeas counsel assert that M.G. failed to disclose that he had been arrested in Pima County for a class four felony theft offense in 2001, pleaded guilty and was placed in a diversionary program (*see* Doc. 20, Ex. 103); and that he failed to disclose that he had an unresolved criminal case with an outstanding warrant[6] pending in the state of Texas for a misdemeanor fraud offense—displaying a fictitious or counterfeit inspection certificate (*see* Doc. 20, Ex. 36). Petitioner contends that M.G.'s failure to disclose his prior arrest and pending charges, and his answers during voir dire, demonstrate that he could not maintain a constitutionally required level of impartiality, as required by the Sixth Amendment. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (the Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."); *Dyer v. Calderon*, 151 F.3d 970, 981–83 (9th Cir.1998) (en banc) (holding that a juror's dishonesty during voir dire may give rise to a finding of implied bias).

The parties agree that Petitioner's claim is without sufficient factual support because Petitioner does not actually possess M.G.'s juror questionnaire. Petitioner asserts that his claim, as proffered, could not have been previously raised because the state court would not permit any investigation of the jury in the absence of a factual proffer showing the necessity for it. Petitioner contends that PCR counsel were not in a position at the time to demonstrate good cause, pursuant to Arizona law, to have the jury questionnaires unsealed because PCR counsel were prohibited from contacting jurors.

Petitioner asserts, in passing, that he can present this claim as one of newly

---

[6] It is not clear from the evidence submitted by Petitioner whether juror M.G. would have been aware of the pending charges or the warrant for his arrest.

discovered evidence or of actual innocence.  Because Petitioner's juror misconduct claim is a constitutional claim, however, it is cognizable in state court under Rule 32.1(a). As such, the claim is subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely proceeding. *See* Ariz. Rule Crim. Proc. 32.2(b); 32.4(a).  Although claims under Rules 32.1(e) and 32.1(h) are exempt from the preclusive effects of Rule 32.2(a), *see* Ariz. Rule Crim. Proc. 32.2(b), Rules 32.1(e) and 32.1(h) do not afford a mechanism for applying the legal standard applicable to a constitutional claim alleging juror misconduct.

Because Petitioner lacks the means to exhaust Claim 6(B) in state court, the claim is "technically" exhausted, and a *Rhines* stay is inappropriate.

## CONCLUSION

Petitioner is not entitled to a stay. Petitioner has no available state remedy to raise his constitutional claims; thus, they are technically exhausted. Because Petitioner does not present a so-called "mixed petition," a stay under *Rhines* is inappropriate.

Having determined that Petitioner is not entitled to a *Rhines* stay, the Court finds it is not appropriate to authorize the Federal Public Defender's Office to represent him in state court. *See Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009) ("[A] district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.")

Accordingly,

**IT IS ORDERED** Petitioner's motion to stay and abey his mixed petition pending exhaustion in state court (Doc. 28) is **denied**.

**IT IS FURTHER ORDERED**:

1.    Petitioner shall file a reply to Respondents' Answer to his Petitioner for Writ of Habeas Corpus no later than **May 31, 2017**.

2.    Any notice of a request for evidentiary hearing shall be filed no later than **July 31, 2017**.

. . . .

1        3.     A response to any notice of a request for evidentiary hearing shall be filed

2    no later than **August 31, 2017**.

3        4.     A reply to any response to a notice of a request for evidentiary development

4    shall be filed no later than **September 15, 2017**.

5        Dated this 27th day of March, 2017.

6

7

8                                                  Honorable Rosemary Márquez

9                                                  United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28