**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shad Daniel Armstrong, | No. CV-15-00358-TUC-RM |
| Petitioner, | DEATH-PENALTY CASE |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Respondents. | |

Before the Court is Petitioner Shad Daniel Armstrong's Motion for Temporary Stay and Abeyance and for Authorization to Represent Petitioner in State Court. (Doc. 162.) Armstrong seeks: (1) a temporary stay of these proceedings while he returns to state court to present claims under *Simmons v. South Carolina*, 512 U.S. 154 (1994); (2) reconsideration of the Court's prior denial of a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), in light of *Shinn v. Ramirez*, 596 U.S. 366 (2022); and (3) authorization for current federal counsel to represent him in the Arizona courts. (*Id.*) Armstrong also requests that the Court grant oral argument on his motion. Respondents oppose Armstrong's request for a stay and for reconsideration of the Court's prior denial of a stay and take no position on his request for habeas counsel to represent him in state court. (Doc. 172.) The Court will grant Armstrong's motion to stay and for authorization for the reasons set forth below. Armstrong's request for oral argument is denied because the issues have been fully briefed and further delay for oral argument is not warranted.

Also pending before the Court is the Crime Victims' Response to Petitioner's

Motion and Joinder in Respondents' Response (Doc. 193), which this Court has construed as a motion for relief pursuant to 18 U.S.C. § 3771. (*See* Doc. 182.)

**I.     Background**

Armstrong was convicted of conspiring to murder and murdering his sister Farrah Armstrong and her fiancé Frank Williams. *State v. Armstrong*, 218 Ariz. 451 (2008). He was sentenced to death by the trial judge, a procedure later found unconstitutional in *Ring v. Arizona*, 536 U.S. 584 (2002). (*Id.* at 456.) Armstrong was resentenced by a new jury in 2006. *Id.* The jury found one aggravating factor, multiple murders, and determined that Armstrong should be sentenced to death for each murder. The Arizona Supreme Court affirmed the convictions and sentences. *Id.*

After unsuccessfully pursuing post-conviction relief ("PCR") in state court, Armstrong filed a petition for writ of habeas corpus in this Court on July 1, 2016. (Doc. 20.)

**II.    Crime Victims' Motion for Relief**

The Crime Victims ("Victims") argue that granting Armstrong's motion to stay would violate their rights under the Crime Victims' Rights Act ("CVRA"), specifically 18 U.S.C. § 3771(a)(7) and (a)(8), and further assert that *Arizona Attorneys for Criminal Justice v. Ducey*, 638 F. Supp. 3d 1038 (D. Ariz. 2022) ("*Ducey*"), cited by Armstrong, provides no basis for granting a stay.

The CVRA states that in federal habeas proceedings arising out of state court convictions, the court shall ensure that a crime victim is afforded "[t]he right not to be excluded from any . . . public court proceeding"; "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding"; "[t]he right to proceedings free from unreasonable delay"; and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(3), (4), (7), (8); (b)(2)(A).

Armstrong acknowledges the Victims' right to be heard but asserts that this right does not encompass "veto power" and does not require that the Court refrain from granting

1    a reasonable delay. (Doc. 184 at 3–4.) The Court agrees. *See Pann v. Warren*, No. 5:08–
2    CV–13806, 2010 WL 2836879, at *4 (E.D.Mich. July 19, 2010) (denying the victims'
3    motion to intervene but granting their "request to be heard" under the CVRA); *United*
4    *States v. Rubin,* 558 F.Supp.2d 411, 417 (E.D.N.Y. 2008) (noting that crime victims "are
5    not accorded formal party status nor . . . intervenor status;" instead, "the CVRA appears to
6    simply accord them standing to vindicate their rights as victims under the [Act]").

7    　　　The Victims argue Armstrong's motion to stay should be denied because it
8    constitutes "unreasonable delay" under the factors set forth in *Barker v. Wingo*, 407 U.S.
9    514, 530 (1972), for evaluating the constitutional right to a speedy trial. (*See* Doc. 183 at
10   4.) The Court disagrees. The Court is aware of no legal basis that would require assessment
11   of unreasonable delay in this context under the standards set forth in *Barker*.

12   　　　In furtherance of promoting the objectives of the CVRA, however, including
13   "ensuring that the district court doesn't discount the impact of the crime on the victims"
14   and "allowing the victim to regain a sense of dignity and respect rather than feeling
15   powerless and ashamed," *United States v. Burkholder*, 590 F.3d 1071, 1075 (9th Cir. 2010),
16   the Court will grant the Victims' motion to the extent the Court reviews their submission
17   and considers the information and opinions therein. *See Brandt v. Gooding*, 636 F.3d 124,
18   137 (4th Cir. 2011) (concluding the district court fully complied with victims' right to be
19   reasonably heard under the CVRA by construing her submissions as amicus briefs
20   providing information and communicating the victim's views to the court); *see also*
21   *Maryland Restorative Just. Initiative v. Hogan*, 316 F.R.D. 106, 116–17 (D. Md. 2016)
22   ("[C]onferring amicus status on [Victim/Movants] is a suitable alternative for them to bring
23   their concerns to the Court's attention."). Because the CVRA provides that victims "may
24   assert the rights granted to them under the CVRA" by filing a motion for relief pursuant to
25   18 U.S.C. § 3771(d)(3), the Court finds it unnecessary to provide the Victims amicus status.

26   　　　Thus, the Court turns to the merits of Armstrong's motion with full consideration of
27   the facts, legal argument and opinions stated in the Victims' motion for relief.

28

### III. *Simmons*-Related Claims

Armstrong requests that the Court exercise its inherent power to grant a stay of these proceedings to allow him to return to state court to petition for relief under Rule 32.1(g) of the Arizona Rules of Criminal Procedure, as interpreted in *Cruz*, to raise three *Simmons*-related claims.

#### A. Applicable Law

In *Simmons*, the United States Supreme Court held that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Cruz v. Arizona*, 598 U.S. 17, 20 (2023) (quoting *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001); *Kelly v. South Carolina*, 534 U.S. 246, 248 (2002)).

Until 2012, Arizona law permitted imposition of a parole-eligible life sentence for defendants convicted of first-degree murder. *See* A.R.S. § 13–703(A) (2000), renumbered as A.R.S. § 13–751(A). In 1994, however, Arizona had abolished parole for all felonies committed after 1993. A.R.S § 41-1604.09(I)(1). Therefore, "the only 'release' available to capital defendants convicted after 1993 was, and remains, executive clemency." *Cruz*, 598 U.S. at 21. Nonetheless, the Arizona Supreme Court refused to apply *Simmons*, on the grounds that Arizona's sentencing scheme was sufficiently distinct from the one at issue in *Simmons*. *See id.*, 598 U.S. at 21–22 (discussing history of the application of *Simmons* in Arizona). The United States Supreme Court summarily rejected this reasoning in *Lynch*, holding that "it was fundamental error to conclude that *Simmons* 'did not apply' in Arizona." *Id*. at 20 (quoting *Lynch v. Arizona*, 578 U.S. 613, 615 (2016)).

In *Cruz*, the defendant argued at trial and on appeal that under *Simmons* he should have been allowed to inform the jury that a life sentence in Arizona would be without parole. The trial court and the Arizona Supreme Court held that Arizona's capital sentencing scheme did not trigger application of *Simmons*. *State v. Cruz*, 218 Ariz. 149 (2008). After the United States Supreme Court issued its holding in *Lynch*, Cruz sought to

raise the *Simmons* issue again, in a PCR petition under Rule 32.1(g), which permits a defendant to bring a successive petition if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." The Arizona Supreme Court denied relief, concluding that *Lynch* was not "a significant change in the law." *State v. Cruz*, 251 Ariz. 203 (2021). The United States Supreme Court disagreed, vacating the Arizona Supreme Court's judgment and remanding the case. *Cruz*, 598 U.S. at 32. The Court found that *Lynch* "overruled binding Arizona precedent" and represented a "clear break from the past." *Id.*

B. Analysis

Armstrong alleges that, during his 2006 resentencing, the jurors were repeatedly misinformed that, if they did not impose the death penalty, he might receive a sentence that would permit him to be paroled after 25 years. (*See e.g.*, RT 11/14/06 at 106) (instructing the jury that if they did not sentence Armstrong to death, "the Court will sentence the defendant to either life without the possibility of release until 25 calendar years in prison are served or natural life"). He maintains that "[b]ecause of Arizona's longstanding misapplication of *Simmons*, at the time of Armstrong's penalty trial and subsequent state appellate and postconviction proceedings, there was no mechanism to inform jurors of a defendant's parole ineligibility or to correct this error in postconviction review." (Doc. 162 at 17.) Armstrong asserts that now, after the decision in *Cruz*, he can raise a *Simmons* claim in state court under Rule 32.1(g).

Armstrong also asserts he can seek relief for two other *Simmons*-related claims, including a claim that the resentencing court violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments through the use of factually incorrect jury instructions, and a prosecutorial misconduct claim alleging the prosecutor in his case was involved in the *Cruz* proceedings thus demonstrating that he "*knowingly* secured a false jury instruction concerning Armstrong's possible parole eligibility and *knowingly* failed to correct [a defense expert's] false testimony on this issue." (Doc. 162 at 19.)

For purposes of this motion, the Court finds Armstrong's proposed *Simmons* and

*Simmons*-related claims potentially meritorious and reviewable by the Arizona courts.

Because Armstrong did not raise these claims in his habeas petition, (*see* Doc. 20; *see also* Doc. 68 at 3–7 (denying motion to include a claim that his jury instructions were unconstitutional because they were contrary to *Simmons* and *Lynch*, finding the proposed new claim untimely because it did not relate back to any timely, properly-raised claim in his petition)), the Court does not analyze Armstrong's stay request under the procedure outlined in *Rhines*, which governs the court's consideration of mixed petitions containing both exhausted and unexhausted federal claims. *See King v. Ryan*, 564 F.3d 1133, 1139 (9th Cir. 2009) ("Given the . . . need to protect against the risk that habeas petitioners with mixed petitions might 'forever los[e] their opportunity for any federal review of their unexhausted claims,' . . . *Rhines* carved out 'limited circumstances' in which it is within the district court's discretion to grant a stay of a mixed petition."). Neither does the concern that a district court must be mindful of "the clear appropriateness of a stay when valid claims would otherwise be forfeited," *Kelly v. Small*, 315 F.3d 1063, 1070 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), come into play here, as the Court has already determined that Armstrong's *Simmons*-related claims cannot be amended to his petition as they are untimely and do not relate back to the original petition. (*See* Doc. 68 at 3–7.)

Rather, the Court considers whether it is appropriate to exercise "its broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). This Court may stay the proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254; *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110–11 (9th Cir. 2005) (explaining that a stay may be appropriate where the resolution of issues in the other proceeding would assist in resolving the proceeding sought to be stayed). "AEDPA does not deprive district courts of that authority . . . but it does circumscribe their discretion." *Rhines*, 544 U.S. at 276.

To evaluate whether to stay an action, the court must weigh the competing interests that will be affected by the grant or denial of a stay, including the possible damage that may result from the granting of a stay; the hardship or inequity a party may suffer in being required to go forward; and whether a stay will simplify or complicate issues, proof, and questions of law. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55)). "The decision to grant a stay . . . is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 568 U.S. 57, 73 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Courts may exercise their discretion to stay even fully exhausted petitions. *See e.g.*, *Kelly*, 315 F.3d at 1070.

The Court has weighed the competing interests that will be affected by the granting of a stay and finds that a stay would further the interests of comity, judicial economy, the resources of counsel and the Court, and the public interest in the fair administration of justice.

The Court finds the latter interest—the fair administration of justice—particularly compelling in this case. In light of *Cruz*, which recognized that the Arizona Supreme Court's application of its procedural rules was so "novel and unfounded" that it did not constitute an adequate state procedural ground, 598 U.S. at 29, and that the state court had disregarded Supreme Court precedent "to dramatic effect for capital defendants in Arizona," *id.* at 28, the Supreme Court vacated judgment and remanded the cases of seven other Arizona death-row inmates to the Arizona Superior Courts for reconsideration. *See Burns v. Arizona*, 143 S. Ct. 997, 998 (2023) (Mem) (addressing a joint petition for a writ of certiorari filed by six death-sentenced petitioners); *Ovante v. Arizona*¸ 144 S. Ct. 56 (Mem) (October 2, 2023). Additionally, since *Cruz*, the Ninth Circuit and this Court together have granted stays to permit several capital habeas petitioners to return to state court to pursue their *Simmons* claims.[1]

---

[1] *See e.g.*, Order, *Speer v. Ibarra*, No. 23-99003 (9th Cir. July 26, 2023); Order, *Newell v. Thornell*, No. 19-99006 (9th Cir. March 22, 2023); Order, *Tucker v. Thornell*, CV 17-3383-DJH (Doc. 102) (Ariz. Dist. Ct. July 10, 2023); Order, *Van Winkle v. Thornell*, CV 18-

- 7 -

As the Court noted in *Cruz*, the Arizona Supreme Court's interpretation of Supreme Court precedent prior to that decision made it "impossible for Cruz, and similarly situated capital defendants, to obtain relief." 598 U.S. at 29.

Because *Cruz* provides a procedure for Armstrong to obtain relief on his *Simmons* claim in the state court, a stay would further the interests of comity, judicial economy, the resources of counsel for both parties, and the public interest in the fair administration of justice. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (stating that a stay may be appropriate where the resolution of related litigation could simplify issues, proof, or questions of law). Should the state court vacate his death sentence and order a new sentencing, this would moot all claims in Armstrong's habeas petition arising from his 2006 penalty phase retrial. *See e.g.*, Order, *Speer v. Ibarra*, No. 23-99004 (9th Cir. July 26, 2023) (granting opposed stay and noting petitioner's argument that "if he obtains relief in state court, 'all claims related to the penalty phase proceeding presently on appeal would be mooted.'"). Additionally, Armstrong alleges that the Arizona trial court failed to preserve a complete record of the proceedings related to his *Simmons* claim. Allowing the state court to address this potential gap in the record in the first instance will facilitate this Court's subsequent review of his federal claims.

The Court is mindful of its duty to afford victims the right to proceedings "free from unreasonable delay," 18 U.S.C. § 3771(a)(7), (b)(2)(A), however, granting a stay in this case will permit "full and fair" consideration of an important constitutional claim in a death penalty case. *See Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (explaining that "death is different" because "execution is the most irremediable and unfathomable of penalties").

Accordingly, having weighed the balance of interests in this case, the Court grants Armstrong's motion to stay his federal habeas petition and hold it in abeyance while he returns to state court to present claims under *Simmons*.

---

3290-MTL (Doc. 136) (Ariz. Dist. Ct. May 9, 2023); Order, *Cropper v. Thornell*, 19-5618-GMS (Doc. 93) (Ariz. Dist. Ct. May 24, 2023); Order, *Martinez v. Thornell*, CV 20-517-DJH (Doc. 77) (Ariz. Dist. Ct. Dec. 12, 2023).

### IV. Motion for Reconsideration

Next, Armstrong requests that, in light of *Shinn v. Ramirez*, 596 U.S. 366 (2022), this Court reconsider its prior denial of Armstrong's request for a stay under *Rhines*. (*See* Doc. 162 at 29–35; *see also* Doc. 166 (recognizing imbedded request for reconsideration of prior order).) The Court will deny this request as moot, in light of the stay that it has granted for purposes of allowing Armstrong to present his *Simmons* claims to the state court in the first instance. "One claim requiring a stay acts as an umbrella for all claims." *Brown v. Smith*, No. 1:19-CV-01796-ADA, 2023 WL 2938295, at *8 (E.D. Cal. Apr. 13, 2023) (quotation omitted); *see e.g.*, *Pandeli v. Shinn*, No. CV-17-01657-PHX-JJT, 2022 WL 16855196, at *5 n.3 (D. Ariz. Nov. 10, 2022) ("[B]ecause Pandeli has demonstrated that at least one of his claims is not plainly meritless, he is entitled to a stay under *Rhines*.") (citing *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017)).

The Court will also grant Armstrong's request for the FPD to represent him in pursuing these claims in state court. *See Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009) ("Pursuant to [18 U.S.C.] § 3599(e)'s provision that counsel may represent her client in 'other appropriate motions and procedures,' a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.").

Accordingly,

**IT IS HEREBY ORDERED granting** Armstrong's Motion for Temporary Stay and Abeyance. (Doc. 162).

**IT IS FURTHER ORDERED authorizing** Armstrong's federal habeas counsel, the Federal Public Defender for the Central District of California, to represent him in state postconviction proceedings.

**IT IS FURTHER ORDERED directing** Armstrong to file: (a) a notice with the state PCR court within 30 days raising his *Cruz* claim; and (b) a status report in this case showing he has filed his *Cruz* notice in state court.

. . . .

**IT IS FURTHER ORDERED directing** Armstrong to file notice with the Court or move for other appropriate relief within 30 days of the conclusion of the state court proceedings.

**IT IS FURTHER ORDERED granting in part** the Victims' motion for relief (Doc. 183) pursuant to 18 U.S.C. § 3771.

Dated this 1st day of March, 2024.

_____
Honorable Rosemary Márquez
United States District Judge